By the Court.
 

 The Interstate Commerce Commission on March 26, ,1935, by
 
 Ex parte No. 115,
 
 208 I. C. C., 4, denied the petition of substantially all class 1 railroad carriers to make certain increases of a general nature in interstate freight rates and charges, but authorized rail carriers to establish for a temporary period expiring June 30,1936, a restricted list of emergency charges to be superimposed upon the then existing freight rates and charges. Paragraph “(e)” of that order read:
 

 “An emergency charge of 10 per cent
 
 may be added
 
 to all switching, floatage, and lighterage charges
 
 except when in connection with line-haul shipments upon which there is no line-haul emergency charge.
 
 Absorption of such charges should be proportionately increased.” (Italics ours.)
 

 The emergency charges for application on interstate traffic were published by the trunk lines, but not by the Youngstown & Suburban and Pittsburgh, Lisbon & Western railroads, to become effective April 19, 1935, through the medium of a tariff of emergency charges, also designated as a master tariff.
 

 On April 15,1935, the trunk lines filed with the Public Utilities Commission a petition, which was docketed as No. 9108, praying that they be permitted to make effective the same increases in Ohio intrastate rates and charges as had been authorized by the Interstate
 
 *473
 
 Commerce Commission in
 
 Ex parte No. 115
 
 as to interstate freight rates and charges.
 

 On May 14, 1935, after hearing, the Public Utilities Commission entered an order granting to all common carriers by railroad, operating in Ohio and subject to the jurisdiction of the commission, authority to superimpose on their existing Ohio intrastate rates and charges, the emergency charges authorized by the Interstate Commerce Commission’s report and order of March 26,1935, in
 
 Ex parte No. 115,
 
 to the same extent and under the same terms and conditions as authorized upon interstate traffic, effective June 1, 1935, and expiring with June 30, 1936. The order of May 14, 1935, by the Public Utilities Commission in No. 9108 modified all outstanding unexpired or suspension orders to the extent necessary to permit application of the emergency charges authorized. That order specifically provided in the last paragraph that the resulting rates should “in all respects be subject to complaint or to investigation and to determination as to the lawfulness of schedules or rates, as provided by law.” Tariffs were filed with the Public Utilities Commission by the trunk lines and various other carriers, effective June 1, 1935, but none was filed by Pittsburgh, Lisbon & Western or Youngstown & Suburban railroads.
 

 In response to supplemental applications filed by the original petitioners, both the Interstate Commerce Commission and the Public Utilities Commission authorized the carriers to continue in effect, with certain modifications not here material, the then existing emergency charges for an additional period to terminate December 31, 1936. The carriers generally, with certain exceptions including the Pittsburgh, Lisbon & Western and the Youngstown & Suburban railroads, filed tariffs and tariff supplements extending the emergency charges.
 

 Complainant contends that the maximum rates prescribed by the Public Utilities Commission, which were
 
 *474
 
 upheld by this court in
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Public Utilities Commission, supra,
 
 for the carload switching of coal ex-Youngstown & Suburban, were the lawful rates and that any emergency charges superimposed thereon were and are unlawful.
 

 The trunk lines challenge the jurisdiction of the Public Utilities Commission to entertain the complaint, and they attack the finding of the commission that the emergency increase of 10 per cent in switching rates or charges was not authorized where there was no line-haul emergency charge. The trunk lines maintain that the exception was intended merely to prevent the assessment of an emergency charge on a switching movement in connection with a commodity which the commission stated would not be subject to a line-haul, emergency charge, and had no application to instances in which the commission authorized a line-haul emergency charge but .in which the carriers had not availed themselves of the authority. The trunk lines also rely upon certain tariffs or special permissions which they claim were intended to clarify the master tariff.
 

 This court is of the opinion that the Public Utilities Commission had jurisdiction of the complaint.
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Public Utilities Commission, supra;
 
 Sections 524, 525, 538 and 541, General Code. Continuing jurisdiction over the subject of emergency rates was specifically retained by the commission in the last paragraph of its order of May 14, 1935, in No. 9108. The trunk lines stress those portions of that order which conform to their views but disregard other portions which are equally pertinent.
 

 The record does not show that either the Youngstown & Suburban or Pittsburgh, Lisbon
 
 &
 
 Western railroads published or established any emergency charges to be superimposed upon their basic rates and charges, during the period involved, for the transportation of carload shipments, in Ohio intrastate commerce from and
 
 *475
 
 to points on-their lines, whether in line-hanl or switching service. Neither carrier was under any obligation to publish or establish such emergency charges, since such charges on bituminous coal in carloads transported in line haul were permissive and not mandatory under the order of the Public Utilities Commission.
 

 We are also of opinion that the Public Utilities Commission correctly concluded that above-quoted paragraph “(e)” is susceptible of only one interpretation,
 
 i. e.,
 
 that, if no emergency charge was made for the line-haul, no emergency charge could be assessed for the reciprocal switching movement following the line-haul movement. That portion of the order was permissive, and the Youngstown & Suburban railroad not having availed itself of the privilege of exacting emergency charges for line-haul movements was not subject to emergency charges for switching services.
 

 The order of the Public Utilities Commission, being neither unlawful nor unreasonable, is affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myebs, Matthias and Hart, JJ., concur.